FILED

2025 NOV 12 AM 9:47

CLERK CL
U.S. BANKRUPTCY CT.
SO DIST. OF CALIF.

Steven Moehling
5420 Old Ranch Road
Oceanside, CA 92057
760-689-0966
sandiegan760@gmail.com
Pro Se Debtor

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF CALIFORNIA

---------------------------------------------------------------

| | | |
|---|---|---|
| In re: | ) | Case No. 19-03857-LT13 |
| STEVEN MOEHLING, | ) | |
| | ) | |
| | ) | Chapter 13 |
| Debtor. | ) | |

---------------------------------------------------------------

MOTION TO ENFORCE DISCHARGE INJUNCTION UNDER 11 U.S.C. §§ 524(a)(2)
§ 524(i), AND 105(a))

1

# TABLE OF CONTENTS

I. INTRODUCTION------------------------------------------------------- 3

II. LEGAL BASIS FOR ENFORCEMENT--------------------------------- 3-4

III. JURISDICTION AND VENUE-------------------------------------- 4

IV. BACKGROUND AND PROCEDURAL HISTORY----------------- 5-13

V. PROCEDURAL IMPLICATION -------------------------------------- 13-14

VI. APPLICATION OF § 524(i) TO FACTS OF RECORD-------------- 14-17

VII. TRANSITIONAL ACCOUNTING AND POST-DISCHARGE
REFRAMING------------------------------------------------------------- 17

VIII. POST-DISCHARGE CORRESPONDENCE AND
INCONSISTENT ACCOUNT REPRESENTATIONS – JUNE 2024
RESOLUTION LETTER AND IMMEDIATE NOTICE
OF DEFAULT -------------------------------------------------------------- 17-19

IX. RELIEF REQUESTED ----------------------------------------------- 19

X. SUPPORTING EVIDENCE AND INCORPORATION
BY REFERENCE ---------------------------------------------------------- 19

XI. DECLARATION OF STEVEN MOEHLING------------------------- 20

XII. PROPOSED ORDER ENFORCING DISCHARGE
INJUNCTION--------------------------------------------------------------- 21

EXHIBITS --------------------------------------------------------------- 22-37

XIII. CERTIFICATE OF SERVICE------------------------------------- 39-40

## I. INTRODUCTION

This Motion seeks enforcement of the discharge injunction issued in Debtor's Chapter 13 bankruptcy, pursuant to 11 U.S.C. §§ 524(a)(2) § 524(i), AND 105(a)). The Debtor respectfully seeks a determination regarding irregularities, both during the Chapter 13 Plan and post-discharge by Select Portfolio Servicing, Inc. ("SPS"), servicer for Wells Fargo Bank, that may have breached the discharge injunction through alleged misapplication of payments, potential inaccuracies in accounting and reporting, and related communications concerning the on-going dispute of the March 11, 2024, Notice of Final Cure declared delinquency and account status. The purpose of this Motion is to request the Court's review and enforcement of its discharge order to ensure full compliance with 11 U.S.C. § 524 and Fed. R. Bankr. P. 3002.1.

This Motion also seeks to clarify and address the accounting irregularities and payment-application discrepancies identified in connection with the confirmed Chapter 13 Plan, the April 28, 2020, Stipulation Granting Adequate Protection, and the March 11, 2024, Form 4100R Reconciliation Report, ensuring that all post-discharge obligations have been properly credited and recorded.

## II. LEGAL BASIS FOR ENFORCEMENT

Although the payments at issue here were made on post-petition obligations maintained under the confirmed Chapter 13 Plan, **11 U.S.C. § 524(i)** extends the protection of the discharge injunction to instances in which a creditor fails to properly credit payments received under a confirmed plan, and that failure causes material injury to the debtor after discharge.

For clarity, the Debtor does not allege post-discharge collection of a discharged pre-petition debt; rather, this Motion concerns the misapplication of plan and post-petition payments in a manner that undermines the discharge's intended effect.

Pursuant to **11 U.S.C. § 105(a)**, this Court retains continuing authority to interpret and enforce its own orders, including the confirmed plan and the discharge order. Together, these provisions authorize the Court to determine whether the creditor's servicing conduct was consistent with the requirements of the plan and the discharge, and to issue such remedial or corrective orders as may be necessary to ensure full compliance.

### Inapplicability of § 524(j) Safe Harbor

Section 524(j) provides a limited exception to the discharge injunction for acts by a mortgage creditor holding a valid lien on the debtor's principal residence, permitting communications and requests for periodic payments that are made in the ordinary course of business and limited to maintaining the security interest. See 11 U.S.C. § 524(j)(1)–(3). This exception does not apply where post-discharge activity extends beyond ordinary informational communications or relies on inaccurate account data. In this case, Select

3

Portfolio Servicing, Inc. ("SPS") issued several "Resolution Letters" based on inaccurate information, repeating a claimed missed payment that have been verified, transmitted an unauthorized/invalid Notice of Default referencing loan acceleration within weeks of the discharge. These activities were not limited to routine billing or informational purposes but appear to have been based on unresolved account discrepancies originating from the plan period. Such actions therefore fall outside the scope of § 524(j) and remain subject to the discharge injunction under §§ 524(a)(2) and 524(i). See, e.g., *In re Cantrell*, 605 B.R. 841 (Bankr. W.D. Mich. 2019); *In re Foster*, 2021 WL 4311116 (Bankr. S.D. Miss. 2021).

## III. JURISDICTION AND VENUE

This Court retains jurisdiction to interpret and enforce its discharge orders under 11 U.S.C. § 105(a), § 524(a)(2), and § 524(i). Venue is proper in this District under 28 U.S.C. § 1409(a). The Debtor's Chapter 13 case, Case No. 19-03857-LT13, was confirmed and discharged in this Court, and the violations alleged herein occurred within the jurisdiction of this District.

### Jurisdiction & Enforcement Clarification

Enforcement of the discharge injunction is an inherent aspect of the Court's continuing authority under 11 U.S.C. §§ 524(a)(2), 524(i), and 105(a). Reopening of the case under § 350(b) is not a prerequisite to the relief requested, as the discharge order is self-executing and enforceable independent of case status. Nevertheless, should the Court determine that limited reopening is administratively appropriate to facilitate evidentiary access or record review, the Debtor respectfully requests that such reopening be expressly limited to the purposes identified in this Motion and not construed as consent to broader re-litigation of plan-period matters.

### Protective Jurisdiction Clarification

This Motion seeks enforcement of the discharge injunction within the scope of 11 U.S.C. §§ 524(a)(2) and 524(i). The Debtor respectfully pleads before this Court because it is this Court that issued the discharge and retains exclusive authority to interpret, correct, and enforce its own orders. Relief requested cannot be granted by the District Court, whose concurrent jurisdiction extends to Debtor's planned federal and state causes of action. Accordingly, the Debtor seeks this Court's intervention solely to ensure that the record of the confirmed Chapter 13 Plan and discharge is accurate and that the injunction Congress established under § 524 is given full effect. Nothing in this Motion is intended to expand this Court's jurisdiction beyond that purpose.

## IV. BACKGROUND AND PROCEDURAL HISTORY

Debtor filed this Chapter 13 case on June 28, 2019. The Court thereafter confirmed a plan under which ongoing post-petition mortgage installments would be paid directly by the Debtor while pre-petition arrears would be satisfied through the Chapter 13 Trustee in accordance with Select Portfolio Servicing, Inc.'s filed Proof of Claim. The plan was completed, and Debtor received a Chapter 13 discharge on April 4, 2024, and closed on April 29, 2024, following full administration.

From the inception of the Plan, Debtor-facing Transaction History Reports illustrate that SPS applied the Debtor's first contractual on-going mortgage payment scheduled for July 1, 2019, to the Trustee's first pre-petition installment of October 1, 2018. This was not an isolated posting as all payments would be recorded in this manner throughout the Plan. The Debtor-facing history reports include numerous inconsistent entries when compared to SPS's Notice of Final Cure 4100R and supporting Reconciliation Report of March 11, 2024.

### Stipulation Granting Adequate Protection (May 2020 – January 2021)

1. Following an early payment delinquency, SPS filed a relief from stay on April 1, 2020, and the parties subsequently entered into a **Stipulation Granting Adequate Protection**, approved April 27, 2020. The Stipulation reaffirmed the existing dual-stream framework, setting **specific commencement dates** for ongoing mortgage installments (May 1, 2020) and for the additional Stipulation-based arrears payments (May 15, 2020), thereby *restoring the loan in good standing contingent on timely performance*.

2. The Stipulation authorized SPS to seek limited ex parte relief through a Declaration of Non-Cure in the event Debtor missed a mortgage and/or Stipulation payment. This Declaration was not exclusive to the repayment of arrears period as it was written to continue throughout the balance of the Plan. Debtor was aware of the significance of this Declaration and remitted all mortgage and arrears payments during this period using Western Union and/or Cashier's Checks.

### May 2020 and June 2020 Stipulation Payment Irregularities

3. At the outset of the Stipulation period, the Debtor remitted **$2,600** in Western Union certified funds ($1,300 received on May 4, 2020, and $1,300 received on May 19, 2020), an amount sufficient to satisfy the first installment of the ongoing mortgage and the Stipulation payment per the Agreement (Contractual mortgage payment $1,692.19 + $913.55 Stipulation Arrears = **$2,595.74**. The mortgage portion was applied on May 19, 2020. The arrears portion, however, was retained in an internal suspense account not visible to the Debtor through Debtor-facing history reports. The **Debtor would send another $2,600 ($1,300 on 5/30/2020 and $1,300 on 6/15/2020). Again, this was sufficient to satisfy the June 2020 mortgage and**

5

**Stipulation payment per the Agreement. Records illustrate that SPS applied a full mortgage payment on May 30, 2020, which does not appear on Debtor-facing history reports or mortgage statements, rather introducing this transaction for the first time on March 11, 2024, nearly four (4) years later in SPS's response to the Notice of Final Cure (4100R). This posting potentially altered the repayment sequence of the Stipulation's financial component that would later resurface several times in SPS' multiple Resolution Letters as part of what it described as a "missed June 2020 stipulation payment". (See Exhibit D)**

4.  On November 23, 2020, SPS inserted $5,046.57 into *Unapplied Funds* and posted three (3) mortgage payments that do not appear on SPS's March 11, 2024, Form 4100R post-petition Reconciliation Report. Their omission in this post-petition report appears to categorize these payments as pre-petition, even though Trustee disbursements had not yet accumulated sufficient funds to complete this transaction. This configuration may indicate that post-petition funds were applied toward pre-petition obligations, resulting in a possible commingling of pre- and post-petition funds.

5.  SPS received Debtor's Western Union certified funds payment totaling $2,620 on November 13, 2020, and posted the corresponding mortgage payment on November 16, 2020. The funds appear to have been held for several weeks before the transaction was reversed in December 2020. Through seven Resolution Letters and nearly two years, SPS has not disclosed the details of this transaction despite being critical to the resolution of the on-going dispute, only classifying the transaction as a "reversal". **No record of the reversal or any resulting delinquency appears in the case docket or Debtor-facing materials for more than three years, until the issue resurfaced and Debtor was first informed eighteen (18) days before discharge during the Notice of Final Cure 4100R Certification.** This transaction later became a focal point in the account-reconciliation matters addressed in the seven Resolution Letters discussed below.

6.  At the conclusion of the arrears-repayment component in January 2021, the Debtor's monthly mortgage statements for December 2020, January 2021, and February 2021 each reflect the account as "current," with no arrears shown. The February 2021 statement—the first issued following completion of the stipulated arrears term—again identified the loan as post-petition current and listed the next payment due on March 1, 2021, indicating that SPS itself treated the loan as contractually performing during and immediately after the Stipulation period.

    However, post-discharge, on September 15, 2025, SPS issued Resolution Letter 7 of 7, stating: *"In February 2021, due to SPS not receiving all of the required ongoing payments, as well as the last stipulation payment, the account was delinquent."*

6

The contemporaneous Debtor-facing mortgage statements appear inconsistent with this later assertion. The existence of conflicting data between SPS's historical statements and its subsequent Resolution Letters support that grounds exist for enforcement review to determine whether plan and post-petition payments were credited and reported in accordance with 11 U.S.C. § 524(i) and Fed. R. Bankr. P. 3002.1.

**March 11, 2024, Notice of Final Cure 4100R and Supporting Reconciliation Report**

7. On March 11, 2024, SPS submitted its response and Certification to the Trustee's 4100N including the Debtor's account standing; both pre-petition and post-petition. This submittal also included a post-petition history report (Reconciliation Report) that appears to conflict with Debtor-facing history reports and/or mortgage statements.

8. The first entry includes the only record correctly identifying Debtor's first payment being applied to his first post-petition installment. All Debtor-facing history reports reflect payments applied to the oldest pre-petition arrears. In the SPS Reconciliation Report, the August 28, 2019, payment was applied to the correct date of July 1, 2019, whereas the Debtor-facing Transaction History Report reflects the Trustee's first pre-petition payment date of October 1, 2018, for this same payment.

9. This post-petition report also appears to reflect payments that are omitted from Debtor-facing history reports and various postings of duplicate payments within the Stipulation period. These include May 30, 2020, July 13, 2020, August 10, 2020, October 12, 2020, and January 15, 2021. These payments coincide with Debtor's incoming mortgage/Stipulation payments on these same dates. However, only one set appears on Debtor's history report, and the record appears to indicate that Principal, Interest, Escrow, and a reduction in Principal Balance occur only once per transaction.

10. Preliminary review of SPS' "Running Suspense" within the Reconciliation report reflects a balance (random selection) of **$1,658.23** as of November 16, 2020, and the Debtor-facing mortgage statement dated December 15, 2020, **(Transaction Activity 11/14/2020 to 12/15/2020)** showing **$8,619.17** in unapplied funds on that same November 16, 2020, date. Again, incoming Trustee disbursements were insufficient to reflect any sizable portion of these funds. This discrepancy raises questions regarding whether plan payments were credited in the manner required under the confirmed plan and whether the 4100R and supporting Reconciliation Report was a truthful and complete Certification.

11. Within the filed Certification of the 4100R Notice of Final Cure, SPS identified **$1,320.88 as "Total Suspense"**. However, an additional Suspense fund payment would be recorded **post-Notice of Final Cure, Post-Discharge on April 23, 2024, in the amount of $1,442.63, following Debtor's April 2024 payment the day before.**

**These additional suspense funds are not identified in the March 11, 2024, Certification.**

**Certification Accuracy and Post-Discharge Implications**

12. On March 11, 2024, Select Portfolio Servicing, Inc. ("SPS") filed a Form 4100R certification stating that the Debtor was "not current on all post-petition payments consistent with 11 U.S.C. § 1322(b)(5)" and identifying a claimed delinquency of $6,021.17. The Form 4100R, as filed with the Court, appeared to present a complete post-petition payment history suggesting ongoing delinquency under the confirmed Plan. In contrast, the borrower-facing account records provided to the Debtor reflected commingled pre- and post-petition entries and did not disclose the existence of unapplied funds or internal adjustments that may have affected the reported balance. It bears noting that no motions for relief, declarations of non-cure, or notices of default were filed following the April 2020 Stipulation Granting Adequate Protection—a period spanning nearly four years of plan performance.

The accuracy of this sworn certification is material under Fed. R. Bankr. P. 3002.1(g)–(i). If the omission or misclassification of payments resulted in an inflated or erroneous delinquency designation, this may constitute a failure to properly credit plan payments causing material injury within the meaning of 11 U.S.C. § 524(i).

**Bankruptcy Plan Setup (BNKP/PAGE1) – 4100R Reconciliation Report Page 6 (See Exhibit C)**

*Introductory Note:* ***Paragraphs 13–21*** *below reference the* ***Bankruptcy Plan Setup (BNKP/Page 1)*** *fields appearing on page 6 of SPS's March 11, 2024,* ***Form 4100R Reconciliation Report.*** *These records are cited not as isolated evidence but as examples of a broader pattern in which Debtor-facing statements and account histories reflect data inconsistent with the figures certified in the 4100R. The Debtor does not allege independent error in SPS's Form 4100R submission at this time but identifies these discrepancies to assist the Court in evaluating whether plan accounting, as implemented, remained consistent across both servicer and Debtor records during the Chapter 13 period and at discharge.*

13. The Reconciliation Report accompanying SPS's March 11, 2024, Form 4100R includes, at page 6, an internal "Plan Information" summary. The summary, created March 4, 2024, appears to list configuration parameters distinguishing pre-petition and post-petition segments of the loan account including Paid -To-Date, Plan Start and End Dates, Suspense Balances, Plan Payment Frequency, and whether payments

8

were administered "inside" or "outside" the plan. The inclusion of this data suggests that the report was generated directly from SPS's internal bankruptcy-servicing platform rather than a public-facing reconciliation template. Because these plan set up fields may govern how SPS' system recognized and applied payments under the Chapter 13 plan, the Debtor requests that the Court permit limited inquiry into the operational role and accuracy of those configuration settings as part of any § 524(i) enforcement proceedings.

**Plan Information Summary**

a) The internal Plan Information summary generated on March 4, 2024, included with SPS's March 2024 Reconciliation Report (Page 6) reflects a **Post-Petition Start Date of May 1, 2020, and End Date of January 15, 2021**— parameters that coincide precisely with the duration of the Stipulation Granting Adequate Protection (arrears period). Those parameters appear to define the range of transactions recognized by SPS's system as post-petition payments. Because several potentially duplicated entries in the Reconciliation Report occur within this exact window, clarification is warranted as to whether the configuration of those Plan Setup dates permitted or influenced any irregularities.

b) The internal Plan Information summary generated on March 4, 2024, included with SPS's March 2024 Reconciliation Report (Page 6) reflects a **Pre-Petition Start Date of 10/1/19, and End Date of 9/1/22.** This appears to define the start and end date of classifying Trustee pre-petition obligations within the Plan.

c) This configuration also suggests that SPS's servicing system may have treated only transactions within that defined window as pre-petition plan payments. Because Debtor has already identified that Debtor-facing history reports reflect payments applied to the pre-petition dates, this warrants further scrutiny as to whether those Plan-Setup parameters may have affected how transactions were later classified, recorded, or reconciled.

14. Within the "Bankruptcy Plan Setup" /" Suspense Balances" of the 4100R Reconciliation Report (Page 6), lists a suspense balance of **$1,874.90** as of March 4, 2024. Two days later on March 6, 2024—five days before filing the Notice of Final Cure Response—SPS recorded a **$1,744.20** payment from **suspense** and a **$1,190.18** "fee reversal." (Debtor-facing history report). The net effect of these transactions was a **$554.02** reduction in suspense, leaving a balance of **$1,320.88**, the same suspense balance used in the calculation within the 4100R filed March 11, 2024, ($7,342.05 less *$1,320.88 Suspense* = $6,021.17). The payment and associated adjustments are not reflected in the filed certification including the supporting Reconciliation Report as the $1,320.88 is now reflected in the 02/27/24 entry. **If this was a Trustee applied payment, it is important to note that as of March 6, 2024, SPS potentially was in possession of $4,507.71 in unapplied pre-petition Suspense.**

9

### The $4,507.71 Suspense Reconstruction

a) **Summary of Suspense Balances**
   - $1,744.20 Payment (March 6, 2024)
   - $1,320.88 ("Total Suspense" identified on 4100R Certification)
   - $1,442.63 Short Payment (April 23, 2024)
   - **Total = $4,507.71**

b) **Trustee Correlation**
   From the **Trustee Disbursement report**, when you apply each trustee-issued payment backward against that $4,507.71 total, the **balance converges at the $436.36 disbursement on August 18, 2022.**

c) **Plan Information Alignment**
   **On page 6 of the 4100R, the "PLAN DUE DATE 09/01/22" is shown as the end date of pre-petition arrears.**

d) **Significance**
   This time and amount convergence suggests that **SPS's Plan-Information configuration (established around April 2020 under the Stipulation Granting Adequate Protection) potentially never re-segmented once pre-petition arrears were completed.**
   If the system continued to treat payments within the same plan ledger after September 2022, it would explain:
   - Accumulation of unapplied suspense;
   - Misclassification of later Trustee or Debtor payments;
   - Comingling of pre- and post-petition funds
   - An incorrect delinquency appearing in March 2024.

   **See Exhibit E**

15. Analysis of SPS's Form 4100R Reconciliation Report and corresponding Trustee Disbursement records indicates that, as of March 2024, and the days leading up to the Certification of the Notice of Final Cure, SPS maintained approximately $4,507.71 in unapplied funds traceable to pre-petition suspense. As identified in the Plan Information Alignment (Paragraph 14 (c), when the Debtor's historical trustee disbursements are offset against that total, the sequence terminates precisely with the $436.36 payment recorded on August 18, 2022—two weeks before the "Pre-Petition End Date 09/01/22" reflected in SPS's internal Plan Information screen. This temporal and mathematical convergence suggests that the servicing configuration established under the April 2020 Stipulation Granting Adequate Protection potentially remained active throughout the plan term and was not re-segmented when pre-petition arrears were satisfied, allowing subsequent post-petition and trustee payments

10

to commingle in suspense. The resulting accounting overlap appears to be the origin of the unapplied-funds balance in March 2024.

16. Within the 4100R Bankruptcy Plan Setup / the **"Post-Petition Paid To Date"** consistent with the Stipulation period, shows **$8,410.95** which is greater than the **$8,221.90** identified as arrears owed in the Stipulation Granting Adequate Protection filed in April 2020, and an **"Unpaid Balance" of $0.00 effective March 4, 2024**, **reflecting arrears completion**, just one week before the Certification and the **undisclosed $6,021.17 delinquency**.

17. To ensure that the confirmed Plan and Discharge Order were implemented accurately, Debtor seeks clarification of SPS's *Plan Setup* and related *Plan Information* configuration from case inception through closure, including any revisions made at any time during the Plan, including but not limited to, the April 2020 Stipulation Granting Adequate Protection, and October 12, 2023 (final Trustee disbursement) through April 29, 2024, closing of the case. Examination of these records would permit the Court to determine whether servicing system parameters or account-configuration changes affected the crediting of Plan payments or the reconciliation presented in the Form 4100R.

18. The *Plan Information* section of SPS's March 2024 Form 4100R (Page 6) lists the field "Payments Inside Plan" as "N" under both the *Pre-Petition* and *Post-Petition* columns. In ordinary servicing systems (i.e. MSP, LPS, or FiServ), these fields designate whether payments are administered through a trustee (inside the confirmed plan) or handled directly between Debtor and servicer (outside the plan). A dual "N/N" classification typically denotes that all payments—both ongoing installments and arrears cure amounts—are being treated as outside-plan transactions. This is consistent with Debtor-facing transaction history reports advancing all payments from the oldest pre-petition payment due.[1]

19. Because the confirmed plan and *Stipulation for Adequate Protection* required the Debtor to maintain ongoing payments while the trustee remitted arrearage installments, the presence of an "N/N" configuration may warrant clarification as to whether SPS's system recognized and segregated plan-based payments as required

---

[1] According to publicly available technical materials from ICE Mortgage Technology, the MSP® Mortgage Servicing System utilized by SPS functions as a centralized loan-servicing platform supporting modules for payment processing, cash reconciliation, investor reporting, and regulatory compliance management. MSP integrates with external systems such as the National Data Center (NDC) and AACER for bankruptcy event tracking and provides audit-trail functionality designed to ensure traceability of payment application and escrow adjustments. See ICE Mortgage Technology, **MSP® Mortgage Servicing System** (product overview) (2025), mortgagetech.ice.com/products/msp-mortgage-servicing-system.

under 11 U.S.C. § 1322(b)(5)[2] and § 524(i). The Debtor does not assert error but requests limited examination of this configuration to confirm that the Plan's structural obligations were properly reflected in SPS's servicing setup.

20. The mortgage-servicing platform used by SPS—known as the **MSP system** (developed by Black Knight and now operated by ICE Mortgage Technology)—is designed to maintain strict audit integrity and compliance with federal servicing regulations. Adjustments to historical payment data cannot be made arbitrarily within MSP; any correction requires controlled transaction codes that preserve the original entry and record the modification in an auditable log. All activity is date- and time-stamped to ensure accuracy in investor reporting and legal compliance.

21. The preceding discussion is offered solely to illustrate how differing data extracts, report templates, or plan-setup configurations could produce conflicting representations of the same payment. These technical distinctions establish the foundation for the post-discharge communications that followed. Shortly after Debtor received notice of this delinquency identified in the March 11, 2024, Form 4100R filing, he would dispute these findings (April 4, 2024) and continuing through September 2025, SPS issued a series of Resolution Letters addressing the same reconciliation issues described above. The preceding system-configuration overview provides context for the communications that followed between the Debtor and SPS regarding these same accounting variances.

### Dispute and Resolution Letters

22. From the date of the filed Dispute on April 4, 2024, the same day the Chapter 13 Discharge was entered—through September 2025, Debtor made repeated good-faith efforts to resolve ongoing accounting discrepancies directly with SPS. These continued efforts included the submission of detailed supporting documentation and correspondence and resulted in SPS issuing seven written *Resolution Letters* dated June 17, 2024; July 31, 2024; September 12, 2024; October 17, 2024; December 11, 2024; March 5, 2025; and September 15, 2025. Despite these exchanges, key matters concerning the March 11, 2024, delinquency designation, the handling of suspense-fund applications, and the reconciliation of post-petition payments remain unresolved. The Debtor therefore seeks the Court's review and enforcement of the discharge injunction under 11 U.S.C. § 524(i) to determine compliance with the discharge order and to address any resulting injury.

---

[2] Section 1322(b)(5) of the Bankruptcy Code authorizes a Chapter 13 plan to "cure and maintain" long-term debts—permitting the debtor to cure pre-petition defaults through trustee disbursements while maintaining ongoing post-petition payments directly to the creditor.

12

**Supporting Documentation For Court's Review**

a) Supporting documentation prepared by the Debtor, attached as Exhibit A, summarizes contemporaneous records from the May 2020 – January 2021 Stipulation period, identifying structural differences between the nine-month Stipulation term approved by the Court and the six-month internal setup reflected in SPS's later reconciliation. This summary is submitted to assist the Court in understanding the record chronology and is not offered for evidentiary admission at this time.

b) A concurrent summary, attached as Exhibit B, outlines the corresponding entries and sequence discrepancies reflected in SPS's March 2024 Reconciliation Report and related Debtor-facing history. It is offered to aid the Court's review of accounting structure and timing, not offered for evidentiary admission at this time.

c) Exhibit C - Bankruptcy Plan Summary Page (excerpted from SPS Form 4100R Reconciliation Report, filed March 11, 2024) This document reflects SPS's Plan setup, payment streams, Paid-To-Date, Suspense on date created (March 4, 2024) and various Plan parameters.

d) Exhibit D – Summary of Post-Discharge Resolution Letters / Notice of Default / Regulatory Response.

e) Exhibit E – Historical Convergence of Trustee Disbursements and Plan End Dates (Part 1 & 2)

## V. PROCEDURAL IMPLICATION

### A. Dual Post-Petition Streams

The "Plan Information" section of SPS's Form 4100R (page 6) contains fields for both *"Post-Petition 1"* and *"Post-Petition 2"*, corresponding to separate sub-ledgers for ongoing mortgage installments and supplemental Stipulation payments. Although the April 2020 *Stipulation Granting Adequate Protection* established two concurrent post-petition obligations, only the first post-petition field appears active and reflects the $913.55 arrears amount as the monthly payment. The second field, which would ordinarily track Stipulation-specific payments, appears unused. This configuration may have contributed to later reconciliation difficulties by merging or obscuring distinct payment flows. The Debtor does not allege error at this stage but notes that limited inquiry into this configuration may assist the Court in verifying whether the plan's dual-stream structure was properly implemented under § 1322(b)(5) and § 524(i).

### B. Multiple Transaction History Reports

Since 2019, SPS has produced Debtor-facing Transaction History Reports listing all activity under the generic label *"Payment."* An alternate Transaction History Report enclosed with SPS's December 11, 2024, *Resolution Letter 5 of 7* includes

13

additional classifications— *"Bankruptcy Plan," "Payment from Suspense,"* and *"Payment"*—that are absent from earlier and later versions. This difference suggests that SPS's servicing system maintained more detailed internal categorizations than were made available to the Debtor during plan administration. Clarification of these record formats could assist the Court in determining whether plan payments were properly credited in compliance with § 524(i).

### C. Concurrent Triple Account History

As an illustration, on **December 8, 2020,** SPS received the Debtor's contractual post-petition mortgage and Stipulation payments for the month of December 2020. On that date, SPS's records appear to present **three different "Due Date" positions**:

1. **Debtor-Facing Transaction History Report** – As of December 8, 2020 - Reflects a "Due Date" of *January 2020*, reflecting the account **11 months delinquent.**
2. **4100R Post-Petition Reconciliation Report** (filed March 11, 2024) – As of December 8, 2020, Reflects a "Due Date" of *September 2020*, reflecting the account **4 months delinquent.**
3. **Monthly Billing Statement (December 2020)** – As of December 8, 2020 - Reflects a "Due Date" of *January 2021*, reflecting the account **current.**

These simultaneous representations may indicate internal inconsistencies in SPS's accounting systems rather than intentional misreporting. Nevertheless, limited enforcement review by the Court under § 524(i) would permit a determination of whether those variations affected compliance with the confirmed plan and the discharge order.

## VI. APPLICATION OF § 524(i) TO FACTS OF RECORD
The Debtor respectfully seeks the Court's review and enforcement of the discharge injunction pursuant to 11 U.S.C. § 524(a)(2) and § 524(i). The supporting account documentation and related communications suggest that Select Portfolio Servicing, Inc. ("SPS") may not have credited plan payments in full accordance with the confirmed Chapter 13 Plan and the Court's discharge order.

These matters were not apparent prior to discharge. Records reflect that the Debtor received formal notice of SPS's March 11, 2024, Notice of Final Cure on March 18, 2024—only eighteen (18) days before entry of the discharge order. Throughout the ensuing four-year period, SPS did not invoke the ex parte Declaration of Non-Cure procedure, and no adverse pleadings or motions alleging delinquency were filed.

Subsequent review of borrower-facing history reports revealed potentially commingled pre- and post-petition payment entries and suspense-fund transactions. These discrepancies, coupled with the absence of adverse filings between May 2020 and SPS's

14

March 11, 2024, Form 4100R response, provide a factual basis for the Court to examine whether the account was administered and certified in accordance with the confirmed Plan and § 524(i).

Additional supporting materials are attached as Exhibit A (Evidentiary Summary of Stipulation-Era Accounting), Exhibit B (March 2024 Reconciliation Report Review), Exhibit C (Bankruptcy Plan Summary Page), Exhibit D (Summary of Post-Discharge Resolution Letters / Notice of Default / Regulatory Response), and Exhibit E (Part 1 – Trustee Disbursement Breakdown (Oct 2023 → Aug 2022)) / Part 2 – SPS Reconciliation Alignment (Mar – Apr 2024)).These records are offered to assist the Court's review of the underlying accounting issues; they are not submitted as evidentiary proof at this stage but rather to illustrate the scope of the discrepancies subject to enforcement under § 524(i).

### Legal Significance of Servicer Certification

Under Federal Rule of Bankruptcy Procedure 3002.1(g), a mortgage servicer responding to a Notice of Final Cure must file a Form 4100R certification under penalty of perjury, attesting that all plan payments have been properly credited and whether the account is current (pre-and post-petition) in accordance with 11 U.S.C. § 1322(b)(5). Such a filing constitutes a sworn representation to the Court pursuant to Rule 9011(b) and 28 U.S.C. § 1746, requiring factual accuracy and completeness.

Courts have recognized that materially inaccurate or incomplete certifications undermine the integrity of the discharge process and may warrant corrective relief, sanctions, or contempt findings under Rule 3002.1(i), § 105(a), or § 524(i). The accuracy of such certifications is essential to the enforcement of both the confirmed plan and the discharge injunction, providing a clear basis for judicial review when post-discharge irregularities are identified.

### Unanticipated Delinquency and Erosion of Procedural Safeguards

As noted above, the alleged delinquency first appeared only weeks before discharge, more than three years after the underlying transactions. The Debtor thus had no meaningful opportunity to clarify or challenge the purported arrears while the case remained under the supervision of the Court and Trustee.

This belated designation effectively bypassed the procedural safeguards established under Fed. R. Bankr. P. 3002.1, which are designed to ensure timely notice of payment discrepancies before discharge. The result shifted the burden of unresolved accounting discrepancies into the post-discharge period—precisely the circumstance § 524(i) was enacted to prevent. For these reasons, and the additional matters described herein, the Debtor requests that the Court exercise its enforcement authority under § 524(a)(2), §

15

524(i), and § 105(a) to review the accuracy of the plan accounting and ensure compliance with the discharge order.

**The circumstances described above extend beyond accounting irregularities. The unexpected post-discharge controversy has undermined the finality and assurance that accompany a completed Chapter 13 Plan. The discharge order is intended to mark the successful conclusion of years of diligent performance and to provide the Debtor a clear and stable financial fresh start. When, immediately before discharge, a creditor introduces an unexplained delinquency, withheld for three years, and subsequent uncertainty persists, the effectiveness of that fresh start is impaired, and the purpose of the discharge injunction is frustrated.**

**The Debtor therefore seeks enforcement of the discharge injunction to restore the finality contemplated by 11 U.S.C. § 524(a)(2) and (i) and to ensure that the integrity of the discharge process is preserved.**

Although the disputed balance was ultimately satisfied after discharge through Debtor's personal funds, including withdrawals from retirement savings, such payment was made under protest and solely to prevent an improper/illegal foreclosure acceleration threat initiated by the June 18, 2024, Notice of Default and Right to Cure issued for July 21, 2024 (following section). The asserted basis for default—the alleged "missed June 2020 Stipulation payment"—had in fact been remitted and documented, yet SPS never reconciled its internal accounting to explain the resulting delinquency ($6,021.17). This pattern continued throughout all seven Resolution Letters. The post-discharge satisfaction of that balance does not alter the fact that the delinquency stemmed from misapplied plan and post-petition payments, nor does it relieve SPS of its duty to maintain accurate records in compliance with 11 U.S.C. § 524(i) and the confirmed Plan.

SPS issued a "Deferral Agreement" purporting to offer relief from the alleged delinquency. Acceptance of that agreement, however, would have required acknowledgment of the delinquency as valid and would have incorporated it into the account's permanent record. At that time, Debtor was still unaware that the certified funds previously remitted had not only been reversed but also returned to Western Union. SPS did not disclose this fact until late August 2024, during a conversation with a customer-service representative. In the days approaching the July 21, 2024, Right To Cure, Debtor was forced to withdrawal retirement funds to satisfy the disputed balance. This sequence further demonstrates that the delinquency narrative was sustained by withheld information and inconsistent accounting, not by a failure of payment performance.

**These pre-discharge events laid the groundwork for a series of post-discharge communications and actions in which SPS offered varying and inconsistent**

16

**explanations of account status, further obscuring the origin of the alleged delinquency and its subsequent treatment.**

## VII. TRANSITIONAL ACCOUNTING AND POST-DISCHARGE REFRAMING

The April 23, 2024, Suspense transaction, although labeled by SPS as a "short payment," was processed in a manner consistent with a full contractual installment: the loan due date advanced, Principal, Interest, and Escrow applied, and Principal Balance adjusted. This occurred just days before administrative closing of the Chapter 13 Plan on April 29, 2024. Subsequently, SPS's June 17, 2024, Resolution Letter reduced the alleged delinquency from $ 6,021.17 to $ 3,731.90 — the exact value of two regular monthly payments of $1,865.95 each. The conflicting nature of these figures suggests that SPS internally adjusted its records to align post-discharge status with a two-month cure rather than reflecting an actual payment default. Such timing and numerical alignment warrant judicial review under 11 U.S.C. § 524(i) to confirm whether Plan payments were credited in full compliance with the confirmed plan and the discharge order.

The final accounting reflected on SPS's records continued to show a delinquency of $6,021.17, the same figure reported on the March 11, 2024, Form 4100R. It appears that SPS elected not to alter the official transaction-level record, instead adjusting its post-discharge narrative to represent a reduced delinquency of $3,731.90 as communicated in the June 17, 2024, Resolution Letter. That reduction — equal to exactly two monthly payments of $1,865.95 each — suggests an after-the-fact recharacterization intended to align the loan's reported status with a two-month delinquency pattern rather than a three-month, pre-discharge default. **Such numerical symmetry and timing imply that SPS prioritized maintaining the integrity of its pre-discharge ledger over accurate reflection of post-discharge performance, effectively substituting narrative adjustment for transactional correction.** This warrants limited enforcement review under 11 U.S.C. § 524(i) to determine whether the discharge order and plan-compliance requirements were satisfied in substance as well as in form.

These post-discharge representations, discussed below, further demonstrate the continuing inconsistency between SPS's internal accounting and its borrower-facing disclosures.

## VIII. POST-DISCHARGE CORRESPONDENCE AND INCONSISTENT ACCOUNT REPRESENTATIONS – JUNE 2024 RESOLUTION LETTER AND IMMEDIATE NOTICE OF DEFAULT

Following the accounting adjustments described above, SPS issued a series of post-discharge communications beginning with its June 17, 2024, Resolution Letter. That letter purported to address the status of Debtor's account after discharge but introduced explanations inconsistent with the March 11, 2024, Form 4100R Certification and the confirmed Plan results. Although SPS had previously represented that the mortgage was

17

delinquent by $6,021.17, the Resolution Letter recast the delinquency as $3,731.90 — precisely two monthly installments of $ 1,865.95 each — without identifying any transaction by which the difference was credited, reversed, or re-applied.

Less than twenty-four hours after transmitting the Resolution Letter, SPS issued a **Notice of Default** asserting that the account remained **two payments behind** and subject to foreclosure acceleration unless cured by July 21, 2024. [3]

Credit-reporting data provide further indication that the delinquency designation may have originated from automated system aging rather than actual payment default. On or about June 10, 2024, Equifax consumer credit records reflected a notation from SPS stating **"Not more than 90 days delinquent."** This entry appeared approximately one week before SPS issued its June 17, 2024, Resolution Letter and the subsequent June 18, 2024, Notice of Default. A 90-day delinquency flag ordinarily corresponds to three full missed installments, yet the account history at that time reflected only two payments outstanding. The temporal proximity between the credit-report update and the default notice supports the inference that both were generated from the same delinquency-aging logic within SPS's servicing system rather than from verified accounting review. This correlation further underscores the need for discharge-enforcement review under 11 U.S.C. § 524(i) and compliance scrutiny under the Federal Trade Commission Consent Order § XII[4]. If prior plan-period delinquencies were never fully cleared in the system, the platform could have continued to age the account as three months past due, thereby producing a Notice of Default even when the borrower appeared only two installments behind. This would be inconsistent with Section XII of the Federal Trade Commission Consent Order (2003), prohibiting initiation of default action unless at least three full payments are due.

The issuance of a Notice of Default so soon after the Resolution Letter — particularly where the alleged delinquency had been numerically reduced without underlying transactional support — raises substantial questions under 11 U.S.C. § 524(a)(2) and § 524(i). Together, these post-discharge documents illustrate the continuing effect of SPS's pre-discharge accounting configuration: inconsistent portrayal of payment status, use of automated delinquency triggers, and the absence of a verified reconciliation matching the

---

[3] This automated default action also conflicts with Section XII(A) of the Federal Trade Commission Consent Order (2003), which prohibits initiating foreclosure or default actions unless a borrower is at least three full payments past due. At the time SPS issued the Notice of Default, they identified that only two payments were outstanding, placing the action outside the permissible threshold established by the Order.

[4] For clarity, this Motion references the Federal Trade Commission Consent Order, Matter/File No. 032 3014, solely to illustrate applicable servicing standards and not as an independent claim for relief. The Debtor expressly reserves all rights to pursue related federal and state causes of action in the United States District Court.

18

confirmed Plan and Form 4100R certification. For these reasons, the Debtor respectfully requests that the Court review these post-discharge communications within the scope of its discharge-enforcement authority to determine whether SPS's conduct complied with the requirements of § 524(i) and Fed. R. Bankr. P. 3002.1.

**Exhibit D** summarizes the pertinent excerpts from SPS's Resolution Letters issued between June 2024 and September 2025 and identifies corresponding inconsistencies with the confirmed Plan results and the March 11, 2024, Form 4100R Certification, including the immediate Notice of Default that followed the first Resolution Letter. This comparative summary is provided to aid the Court's review of post-discharge contradictions relevant to enforcement under 11 U.S.C. § 524(i).

## IX. RELIEF REQUESTED
The Debtor respectfully requests that this Court:

1. **Find** that Select Portfolio Servicing, Inc.'s handling of plan and post-petition payments, as described herein, may constitute noncompliance with 11 U.S.C. § 524(i), and determine the extent of any such violation(s);
2. **Direct** a full accounting reconciliation of the Debtor's mortgage account and order corrective crediting or adjustments as necessary to ensure that all payments received under the confirmed Plan were properly applied in accordance with the discharge order;
3. **Authorize** a limited review of the loan's servicing configuration and Plan setup parameters to confirm that the structural obligations of the Chapter 13 Plan were accurately reflected in SPS's records and maintained through discharge;
4. **Grant** such other and further equitable relief as the Court deems just and proper, including any remedial or contempt measures appropriate under 11 U.S.C. §§ 105(a), 524(a)(2), and 524(i); and
5. And any further accounting, production, or limited review the Court deems necessary to confirm compliance with the discharge order.

## X. SUPPORTING EVIDENCE AND INCORPORATION BY REFERENCE
Debtor incorporates by reference Exhibit A (Evidentiary Summary of Stipulation-Era Accounting), Exhibit B (March 2024 Reconciliation Report Review), Exhibit C - Bankruptcy Plan Summary Page, Exhibit D - (Summary of Post-Discharge Resolution Letters / Notice of Default / Regulatory Response), and Exhibit E – (Historical Convergence of Trustee Disbursements and Plan End-Date) as support for this Motion and for any subsequent enforcement proceedings under 11 U.S.C. § 524(i).

## XI. DECLARATION OF STEVEN MOEHLING

I, Steven Moehling, declare under penalty of perjury under the laws of the United States that the facts stated in Sections I through X, including supporting Exhibits are true and correct to the best of my knowledge and belief. Executed at Oceanside, California.

Dated: November 12, 2025

Steven Moehling
Pro Se Debtor

## XII. PROPOSED ORDER ENFORCING DISCHARGE INJUNCTION

Upon consideration of the Debtor's Motion to Enforce Discharge Injunction under 11 U.S.C. §§ 524(a)(2) and 524(i), and good cause appearing,

**IT IS HEREBY ORDERED** that Select Portfolio Servicing, Inc. shall comply with all provisions of the discharge injunction under 11 U.S.C. § 524;

**IT IS FURTHER ORDERED** that SPS shall undertake corrective action to reconcile the Debtor's mortgage account in accordance with the confirmed Chapter 13 Plan and the Court's discharge order;

**IT IS FURTHER ORDERED** that the Court retains jurisdiction under 11 U.S.C. § 105(a) to enforce this Order and to consider any additional relief necessary to ensure compliance.

DATED: _____

_____

Hon. Laura S. Taylor
United States Bankruptcy Judge

21

**EXHIBITS**

Exhibit A – Evidentiary Summary of Stipulation-era Accounting

Exhibit B – March 2024 Reconciliation Report Review

Exhibit C – Bankruptcy Plan Summary Page (Excerpt from SPS 4100R)

Exhibit D – Summary of Post-Discharge Resolution Letters / Notice of Default / Regulatory Response

Exhibit E – Historical Convergence of Trustee Disbursements and Plan End-Date

United States Bankruptcy Court
Southern District of California

In re: Steven Moehling
Case No. 19-03857-LT13

EXHIBIT A

EVIDENTIARY SUMMARY OF STIPULATION-ERA ACCOUNTING (2020-2021)
(Prepared in support of Motion To Enforce Discharge Injunction under 11 U.S.C. §§
524(a)(2), 524(i), AND § 105(a))


Sources:

- Select Portfolio Servicing, Inc. (SPS)
- Form 4100R Notice of Final Cure – Reconciliation Report, (filed March 11, 2024)
- Debtor-facing Mortgage Statements
- Debtor-facing Transaction History Reports

**EXHIBIT A – Evidentiary Summary of Stipulation-Era Accounting (2020–2021)**

### I. System Configuration Overview

This section provides an overview of SPS' account handling during the Stipulation Granting Adequate Protection period. Records reviewed indicate that post-petition Debtor payments and trustee disbursements were treated inconsistently, with indications of dual histories separating Debtor-facing and court-facing records.

### II. Ledger Reconstruction Timeline (May 2020 – Feb 2021)

| Date / Range | Tender or Record Event | Intended Treatment under Stipulation or Contract | Observed Servicer Accounting | Resulting Accounting Condition (for Court's Review) |
|---|---|---|---|---|
| May 4 2020 | $1,300 certified funds (Western Union) | Partial payment towards 1st installment / May 1 contractual payment / Stipulation | Reflected as partial payment; held in suspense | Held in Suspense |
| May 19 2020 | $1,300 certified funds ($2,600 collected for May 2020) | Apply as 1st mortgage payment and 1st arrears per Stipulation Agreement | Applied 1st mortgage payment only. Arrears payment kept off Debtor view | Posted full mortgage payment. No Stipulation payment recorded |
| May 30 2020 | $1,300 certified funds (Western Union) | Partial payment towards June 2020 | Received Debtor's Western Union $1,300 and temporarily moved to Suspense. No payment applied | Reconciliation report (Form 4100R) shows a full-payment entry dated 5/30/20 not present on Debtor statements/history reports. |
| June 15 2020 | $1,300 certified funds (Western Union) | Apply as 2nd mortgage payment and 2nd arrears per Stipulation Agreement | Applied mortgage payment only. Arrears payment kept off Debtor view | Full mortgage payment. Arrears not applied to the Stipulation Agreement as required. |

24

Exhibit A

| Date / Range | Tender or Record Event | Intended Treatment under Stipulation or Contract | Observed Servicer Accounting | Resulting Accounting Condition (for Court's Review) |
|---|---|---|---|---|
| Aug – Nov 2020 | Ongoing monthly tenders using Western Union | Continue Stipulation performance and contractual currentness | Appear to show Suspense irregularities, combined treatment of plan. | Indicates blending of payment categories and duplicate entries. |
| Nov 23 2020 | Three-payment bulk posting. $5,046.57 inserted into Unapplied Funds (Suspense) | Payments to be applied upon receipt or when accumulation represents full payment | Ledger shows simultaneous "payment" postings with conflicting pre- and post-petition ID | Omitted from 4100R classifying these as pre-petition – using insufficient Trustee funds |
| Dec 7 2020 | Reversal of certified funds ($2,620 Western Union) without notice | No return anticipated; Inform parties and/or file adverse pleading of delinquency | No execution of ex parte Declaration of Non Cure. Procedural silence for more than 3 years | Reported on 4100R identifying delinquency for first time in 3 years, 3 months. |
| Jan 15 2021 | Final Stipulation installment (month 9 of 9) | Completion of Stipulation term and transition to regular servicing | Confirmation SPS treated Debtor's account as current | 4100R shows due date of 11/1/20, 90 days in the arrears |
| Feb 12 2021 | Debtor Statement (Current; Next Due 3/1/21) | Reflect loan current after Stipulation completion | Statement shows post-petition current status with no arrearage listed. | 4100R shows 12/1/20 Due Date, 90 days in the arrears |

## III. Summary for Court Review and Document-Format Observation

The foregoing table outlines key accounting sequences during the Stipulation period, demonstrating discrepancies between intended plan treatment and recorded application. These observations warrant limited review to confirm whether the loan was serviced in full conformity with the confirmed plan and Stipulation terms.

25

Exhibit B

United States Bankruptcy Court
Southern District of California

In re: Steven Moehling
Case No. 19-03857-LT13

EXHIBIT B

MARCH 2024 RECONCILIATION REPORT REVIEW
(Prepared in support of Motion To Enforce Discharge Injunction under 11 U.S.C. §§ 524(a)(2) § 524(i), AND 105(a))

Sources:

- Select Portfolio Servicing, Inc. (SPS)
- Form 4100R Notice of Final Cure – Reconciliation Report, (filed March 11, 2024)
- Debtor-Facing Mortgage Statements
- Debtor-Facing Transaction History Report

## EXHIBIT B - MARCH 2024 RECONCILIATION REPORT REVIEW

(Prepared in support of Motion To Enforce Discharge Injunction under 11 U.S.C. §§ 524(a)(2) § 524(i), AND 105(a))

Exhibit Table – Reconciliation & Suspense Analysis

| Date / Entry Group | Record Source | Observation | Context or Cross-Reference | Accounting Effect for Court Review |
|---|---|---|---|---|
| Aug 28 2019 | Reconciliation Report | Earliest payment line in 4100R shows correct post-petition due date July 1, 2019, the only document reflecting that accurate start. | Debtor-facing reports post this payment to Trustee's first pre-petition installment. | Appears to represent the official application of first post-petition payment as consistent to all parties |
| May 30, 2020 / July 13, 2020 / Aug 10, 2020 / Oct 12, 2020 / Jan 15 2021 | 4100R Reconciliation Report; Debtor-facing History Reports | 4100R lists these as payment postings; none appear as Debtor-visible mortgage-payment entries. | Payments applied same day as new incoming funds. | Appears to indicate reconstructed ledger activity not mirrored on Debtor side. |
| Running Suspense Balances (various) | 4100R cumulative suspense column inconsistent with Debtors | Running suspense amounts differ Transaction History Report vs Reconciliation Report for same periods. | Examples: May 2020–Jan 2021, specifically, and continuing throughout the plan. | Suggests non-parallel tracking of suspense between internal and Debtor records. |
| Feb 27, 2024, Running Suspense = $1,320.88 | 4100R summary page | Used in calculating $6,021.17 delinquency reported in Form 4100R. | Appears to have been calculated from a March 6, 2024, transaction (see below). | Retroactive application of suspense suggests potential reconstruction. |
| Mar 4, 2024, Plan Setup Section (p. 6) | 4100R Reconciliation Report, Page 6. | Lists Suspense Balance $1,874.90. | Same day, Debtor history shows additional entries below. | Internal and Debtor ledgers diverge by ≈ $554.02 after adjustments. |

27

Exhibit B

| Date / Entry Group | Record Source | Observation | Context or Cross-Reference | Accounting Effect for Court Review |
|---|---|---|---|---|
| Mar 6, 2024, Fee Reversal ($1,190.18) | Debtor History Report only | Appears on Debtor side, omitted from 4100R. | Integral to the $4,507.71 Suspense balance effective the date of this transaction. | When offset against $1,874.90 (Plan Setup), residual aligns to $1,320.88 running suspense (2/27/24). |
| Mar 6, 2024, Mortgage Payment ($1,744.20) | Debtor History Report only | Absent from 4100R. | Same calculation set as above. | Suggests later-dated credits retroactively influencing prior running suspense. |
| 03/04/24; 4/23/24 | Certification of Notice of Final Cure (Form 4100R) | $1,320.88 certified as total Suspense funds available. See Section III, Paragraph 14, | $1,442.63 additional Suspense posted on April 23, 2024, | Certified March 11, 2024, totals as "complete and accurate" |

Exhibit B

**Summary for Court Review**

1. Unique Entries: The August 28, 2019, line is the sole record confirming the correct post-petition due date of July 1, 2019.

2. Duplicate or Internal Postings: Payments dated 5/30/20, 7/13/20, 8/10/20, 10/12/20, and 1/15/21 appear in the reconciliation but not on Debtor history reports or statements. When duplicate payments are identified, only one payment reflects Principal, Interest, Escrow, and a reduction in Principal Interest.

3. Suspense Discrepancies: Running suspense balances differ materially between the Reconciliation Report and Debtor records across multiple months.

4. Reconciliation Report, Transaction History Report, and mortgage statements reflect three concurrent histories.

5. Retroactive Adjustment: The 2/27/24 running suspense of $1,320.88 can only be reached by factoring in March 4, 2024, entries omitted from the 4100R, implying that balances were recalculated after later postings. Final Trustee installment occurred on October 12, 2023 (five months earlier).

6. Relevance to § 524(i): The variances between servicer-facing and Debtor-facing ledgers may bear directly on whether plan-period payments were applied "as provided by the plan."

Prepared by: Debtor Steven Moehling

Exhibit C

Page 1 of 1

## Bankruptcy Plan Setup (BNKP/PAGE1)

```
    0017539180          BANKRUPTCY PLAN SETUP   CH 13 PRO SPS 03/04/24  18:12:11
8  MOEHLING  DUE 11/01/23                       TYPE CONV. RES.    ARM
   5420    OLD RANCH RD    OCEANSIDE                      CA 92057
-- Suspense Balances ------------------------------------------------------------
POST-PET DUE          TRUSTEE       DEBTOR   PP PAYMENT         POST-1      POST-2
   11/01/23               .00    1,874.90           .00           .00         .00
                      MSP SUSP     ----------------PLAN INFORMATION---------------
LEDGER: N          1,874.90      PRE-PETITION    POST-PETITION 1   POST-PETITION 2
EXPECTED 1ST PLAN PMT DATE          10/01/19         05/01/20
            PLAN DUE DATE           09/01/22         01/15/21
            PLAN PAYMENT                 .00           913.55               .00
      PLAN PAYMENT FREQUENCY             12                06               00
NEXT LOAN DUE DATE IN PLAN      04/01/19 COMPL     05/01/20
NEXT LOAN PAYMENT IN PLAN        1,329.41              .00               .00
        PAYMENTS INSIDE PLAN             N                 N
                 CONFIRMED      16,835.30  *        8,410.95               .00
               PAID-TO-DATE     16,835.30           8,410.95               .00
            UNPAID BALANCE            .00               .00               .00
        PAYMENT MORATORIUM
          MORATORIUM END
               PAID BTD/CTD          .00               .00               .00
        PAID YEAR TO DATE            .00               .00               .00

1:SCROLL FWD
```

United States Bankruptcy Court
Southern District of California

In re: Steven Moehling
Case No. 19-03857-LT13

Exhibit C
SPS Plan Information Page - 4100R Reconciliation Report (Page 6)

about:blank                                                            3/5/2024

United States Bankruptcy Court
Southern District of California

In re: Steven Moehling
Case No. 19-03857-LT13

EXHIBIT D

SUMMARY OF POST-DISCHARGE RESOLUTION LETTERS / NOTICE OF
DEFAULT / REGULATORY RESPONSE

June 2024 – September 2025
(Prepared in support of Motion To Enforce Discharge Injunction under 11 U.S.C. §§
524(a)(2) § 524(i), AND 105(a))

Sources:

- Select Portfolio Servicing, Inc. (SPS)

**Summary of Post-Discharge Resolution Letters (June 2024 – March 2025)**

During the period following confirmation of the Stipulation and through the completion
of the Chapter 13 Plan, the Debtor maintained regular scheduled mortgage payments. No
adverse pleadings, motions for relief, or declarations of non-cure were filed by Select
Portfolio Servicing, Inc. ("SPS"). This consistent record reasonably established the legal
inference that the mortgage was current as of the time of the 4100R Certification on
March 11, 2024.

On March 18, 2024, the Debtor officially received notice by mail of SPS's Form 4100R
response dated March 11, 2024—**only eighteen days before discharge**. With limited
time and believing the alleged delinquency to be erroneous, the Debtor filed a formal
dispute on April 4, 2024, same day as the discharge.

The correspondence that followed, reflected in the Resolution Letters summarized herein,
presents materially conflicting, duplicating, and inconsistent explanations of account
status, suspense-fund application, and reconciliation of the $6,021.17 delinquency within
the 4100R. This exhibit provides a consolidated comparison of those communications
against the confirmed Plan results and SPS's Form 4100R certification to assist the Court
in evaluating the accuracy of SPS's post-discharge representations under 11 U.S.C. §
524(i).

31

Exhibit D

**EXHIBIT D**

**Summary of Post-Discharge Resolution Letters / Notice of Default /Regulatory Response (June 2024 – March 2025)**

*(Comparison of Servicer Statements / Conflict and/or Inconsistency)*

| Date / Reference No. | Quoted Language from SPS Resolution Letter | Conflict / Inconsistency with Plan or Certification |
|---|---|---|
| **June 17, 2024 – Resolution Letter 1** | *"Out of the nine stipulation payments, there was a missed stipulation payment on June 15, 2020, for $913.55 as outlined by the Court"* | See Section IV, Paragraph 3 |
| **June 18, 2024, Notice of Default** | **Notice of Default** sent to Debtor less than 24 hours after first Resolution Letter based on two missed payments. | Threatening foreclosure acceleration language, July 21, 2024, Right to Cure despite having no legal authority to enforce. |
| **July 31, 2024 – Resolution Letter 2** | *"Out of those nine stipulation payments, there was a missed stipulation payment on June 15, 2020, for $913.55 as outlined by the Court"* | See Section IV, Paragraph 3 |
| **September 12, 2024 – Resolution Letter 3** | *"When SPS reconciled the account, out of those nine stipulation payments that were ordered to resolve the motion for relief, there was a missed stipulation payment in the amount of $913.55 on June 15, 2020"* | See Section IV, Paragraph 3 |
| **October 17, 2024 – Resolution Letter 4** | *"In your inquiry, you questioned the payments paid by trustee that were included in the filed Proof of Claim"* | Listing months identified in the Proof of Claim was not information Debtor was seeking |
| **December 11, 2024 –** | *"Out of those nine stipulation payments, below is the itemization of what was due per the filed stipulation* | Missed June 2020 stipulation payment transitioned into this conclusion. Still no specific |

32

Exhibit D

| Date / Reference No. | Quoted Language from SPS Resolution Letter | Conflict / Inconsistency with Plan or Certification |
|---|---|---|
| **Resolution Letter 5** | *and amounts paid and/or returned for insufficient funds, At the end of the stipulation period, which was January 2021, total funds that were received and not returned was $20,930.00 which was short 2,526.21 from the total amount due of $23,456.21. Immediately going into February 2021 due to not all of the ongoing payments and the last stipulation payment, the account was delinquent".* | reference to returned Certified funds or reconciliation of the March 2024 $6,021.17 Certification. No notice to Debtor, Debtor's attorney, Trustee, or this Court. No adverse filing(s) on record. |
| **March 5, 2025 – Resolution Letter 6** | *"We have thoroughly reviewed this matter multiple times, and we have sent you several written responses that not only informed you of our findings, but also of our position on this issue". "We reviewed your claims and find no merit to your allegations, SPS is confident that the servicing of the account has been compliant with all applicable state and federal regulations".* | SPS permanently closed the dispute on March 5, 2025, leaving the underlying reconciliation issues unresolved. |
| **September 15, 2025, Resolution Letter 7** | *"SPS has thoroughly reviewed this matter multiple times and has sent you several written responses that informed you not only of our findings, but of its position on this issue".* | Regulatory FTC/CFPB response. SPS would not directly respond to the FTC letter contents. |

Exhibit E

United States Bankruptcy Court
Southern District of California

In re: Steven Moehling
Case No. 19-03857-LT13

EXHIBIT E

HISTORICAL CONVERGENCE OF TRUSTEE DISBURSEMENTS AND PLAN
END-DATE

(Prepared in support of Motion To Enforce Discharge Injunction under 11 U.S.C. §§
524(a)(2) § 524(i), AND 105(a))

Sources:

- Select Portfolio Servicing, Inc. (SPS)
- Form 4100R Notice of Final Cure – Reconciliation Report, p. 6 (filed March 11, 2024)
- Debtor-Facing Transaction History Report

The Debtor facing Transaction History Report reflects cumulative Trustee disbursements reaching **$4,507.71**, commencing on or about **August 18, 2022**. SPS's own Plan Information screen lists a **pre-petition end-date of September 1, 2022**, only two weeks later. One year beyond this "end date", the Trustee submitted his final disbursement completing the **$4,507.71** suspense total. This temporal and mathematical continuity suggests that the servicing system configuration established under the **April 28, 2020, Stipulation Granting Adequate** Protection was potentially never re-segmented after arrears satisfaction, **allowing post-petition and Trustee payments to commingle and producing the disputed suspense balance that persisted through discharge.**

The ten trustee disbursements total **$4,239.92**, leaving a **$267.79** variance to the **$4,507.71** suspense figure that reappears in SPS's March–April 2024 records; given the fee reversals and suspense reallocations reflected in SPS's ledger, a limited § 524(i) enforcement review is warranted to reconcile the variance and confirm plan-compliant application of payments.

34

EXHIBIT E
**Part 1 – Trustee Disbursement Breakdown (Oct 2023 → Aug 2022)**

*(Source – Chapter 13 Trustee Disbursement Report; Debtor-facing Transaction History Report)*

| No. | Date Paid | Amount Applied to SPS | Running Cumulative Total | Notes |
|---|---|---|---|---|
| *N/A* | *March 5, 2024* | *N/A* | *$4,507.71* | ***Total of Pre-Petition Funds Available on March 5, 2024*** |
| 10 | 10/12/2023 | $ 37.38 | $ 4,470.33 | Final trustee disbursement shown on report. |
| 9 | 09/14/2023 | $ 266.18 | $ 4,204.15 | Partial disbursement during plan wrap-up. |
| 8 | 07/20/2023 | $ 500.00 | $ 3,704.15 | — |
| 7 | 06/22/2023 | $ 500.00 | $ 3,204.15 | — |
| 6 | 05/25/2023 | $ 500.00 | $ 2,704.15 | — |
| 5 | 04/13/2023 | $ 500.00 | $ 2,204.15 | — |
| 4 | 03/16/2023 | $ 500.00 | $ 1,704.15 | — |
| 3 | 02/16/2023 | $ 500.00 | $ 1,204.15 | — |
| 2 | 01/19/2023 | $ 500.00 | $ 704.15 | Continuation of plan payments. |
| 1 | 08/18/2022 | $ 436.36 | $ 267.79[5] | First disbursement in the final phase (pre-petition segment nearing end). |

Subtotal of 10 trustee disbursements (8/18/22 → 10/12/23): $ 4,239.92. There were no pre-petition funds received by Trustee between transaction 1 & 2 above.

**Residual variance to $4,507.71: $ 267.79**
*(To be reconciled via ledger adjustments such as suspense reallocations, fee reversals, short-pay offsets, timing corrections, or interest/escrow adjustments. Exact allocation requires transaction-level audit logs.)*

---

[5] The approximate $ 267.79 variance between the cumulative Trustee disbursements ($ 4,239.92) and the suspense total later identified ($ 4,507.71) potentially corresponds to the "short payment" entry dated April 23, 2024. In standard servicing practice, such short payments are temporarily retained in suspense until sufficient funds are received to complete a full contractual installment. This residual amount therefore appears to represent a partial or unapplied remittance rather than an additional disbursement, and its presence and running calculation herein supports a limited § 524(i) accounting review to confirm proper crediting of plan payments.

35

Exhibit E


bankruptcy
link

Hello, smoehling!      Log off      Contact Epiq

## 1903857 – MOEHLING, STEVEN MICHAEL

### Selected Trustee Information

Michael Koch, Chapter 13
402 West Broadway, Suite 1450
San Diego, CA 9210105544

### Select another trustee

### Claim Disbursements

| Ref No. | Claim | Class | Date | Proc Period | Transaction | Check # | Amount | Principal |
|---|---|---|---|---|---|---|---|---|
| CONVPYM | 005 | 1 | 10/12/2023 | 10/2023 | | 466667 | 37.38 | 37.38 |
| CONVPYM | 005 | 1 | 9/14/2023 | 9/2023 | | 466237 | 266.18 | 266.18 |
| CONVPYM | 005 | 1 | 7/20/2023 | 7/2023 | | 465285 | 500.00 | 500.00 |
| CONVPYM | 005 | 1 | 6/22/2023 | 6/2023 | | 464832 | 500.00 | 500.00 |
| CONVPYM | 005 | 1 | 5/25/2023 | 5/2023 | | 464392 | 500.00 | 500.00 |
| CONVPYM | 005 | 1 | 4/13/2023 | 4/2023 | | 463797 | 500.00 | 500.00 |
| CONVPYM | 005 | 1 | 3/16/2023 | 3/2023 | | 463251 | 500.00 | 500.00 |
| CONVPYM | 005 | 1 | 2/16/2023 | 2/2023 | | 462771 | 500.00 | 500.00 |
| CONVPYM | 005 | 1 | 1/19/2023 | 1/2023 | | 462252 | 500.00 | 500.00 |
| CONVPYM | 005 | 1 | 8/18/2022 | 8/2022 | | 459481 | 436.36 | 436.36 |
| CONVPYM | 005 | 1 | 7/21/2022 | 7/2022 | | 458997 | 500.00 | 500.00 |
| CONVPYM | 005 | 1 | 6/23/2022 | 6/2022 | | 458418 | 500.00 | 500.00 |
| CONVPYM | 005 | 1 | 5/12/2022 | 5/2022 | | 457831 | 500.00 | 500.00 |
| CONVPYM | 005 | 1 | 3/17/2022 | 3/2022 | | 456804 | 500.00 | 500.00 |
| CONVPYM | 005 | 1 | 2/17/2022 | 2/2022 | | 456163 | 500.00 | 500.00 |

https://www.bankruptcylink.com/Cases/ClaimTrans/1903857?returm=0                                          1/2

36

Exhibit E

EXHIBIT E
**Part 2 – SPS Reconciliation Alignment (Mar – Apr 2024)**

*(Source – SPS 4100R Reconciliation Report & Transaction History)*

| Date | SPS Entry | Amount | Relationship to Trustee Total | Observations |
|------|-----------|--------|-------------------------------|--------------|
| 03/06/2024 | Suspense movement (–$1,744.20; +$1,190.18 fee reversal) | Net - $554.02 | Ledger cycling consistent with legacy configuration | Indicates internal reclassifications rather than new funds. |
| 03/11/2024 | 4100R Certification – Suspense on hand | $1,320.88 | Component within the historical $4,507.71 | Sworn representation under Rule 3002.1(g). |
| 04/23/2024 | Post-discharge application from suspense | $1,442.63 | Completes offset sequence | Depletes remaining suspense toward alleged arrears. |

**Observed "suspense pool" reference figure: $ 4,507.71**
*(The $267.79 variance above is within the magnitude of these ledger reallocations and is appropriately resolved via a limited § 524(i) accounting review.)*

37

Respectfully submitted,

Dated: November 12, 2025

Steven Moehling
Pro Se Debtor

## XIII. CERTIFICATE OF SERVICE

I, Steven Moehling, declare under penalty of perjury that on November 11, 2025, I served the foregoing *MOTION TO ENFORCE DISCHARGE INJUNCTION UNDER 11 U.S.C. §§ 524(a)(2), 524(i), AND § 105(a))* including the Proposed Order and all attached Exhibits, by depositing true and correct copies via United States Certified Mail, addressed to the following parties:

(Primary Service):

Select Portfolio Servicing, Inc.
c/o CSC – Lawyers Incorporating Service
2710 Gateway Oaks Drive, Suite 150N
Sacramento, CA 95833-3505

Select Portfolio Servicing, Inc. (Corporate Correspondence)
P.O. Box 65250
Salt Lake City, UT 84165-0250

Tiffany & Bosco, P.A. (Counsel of Record in Bankruptcy Case No. 19-03857-LT13)
Attn: Bankruptcy Department
2525 E. Camelback Rd., Suite 700
Phoenix, AZ 85016

Kutak Rock, LLP (Current Litigation Counsel for SPS)
Attn: Steven Dailey
5 Park Plaza, Suite 1500
Irvine, CA 92614

Office of the United States Trustee
Southern District of California
880 Front Street, Suite 3230
San Diego, CA 92101

Service upon both Tiffany & Bosco, P.A. and Kutak Rock LLP is made to ensure notice to counsel who have represented Select Portfolio Servicing, Inc. in matters directly related to this loan during and after the Chapter 13 proceeding.

(Notice Only to the following parties via Certified Mail)

Michael Koch, Standing Chapter 13 Trustee
402 W. Broadway Ste 1450
San Diego, CA 92101-8544
Served for notice purposes only; no relief is sought against the Trustee.

Andrew Moher
Moher Law Group
424 F Street # 203
San Diego, CA 92101
Served for notice purposes only; no relief is sought, and no appearance is required.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.


Dated: November 12, 2025


Steven Moehling
Pro Se Debtor