Order Entered on
March 26, 2026
by Clerk U.S. Bankruptcy Court
Southern District of California

**UNITED STATES BANKRUPTCY COURT**
SOUTHERN DISTRICT OF CALIFORNIA
325 West "F" Street, San Diego, California 92101-6991

In re:

STEVEN MICHAEL MOEHLING,

Debtor.

BANKRUPTCY NO.   19-03857-CL13
Date of Hearing:   March 23, 2026
Time of Hearing:   10:00 a.m.
Name of Judge:   Christopher B. Latham

## ORDER ON DEBTOR'S MOTION TO ENFORCE THE DISCHARGE INJUNCTION

IT IS HEREBY ORDERED as set forth on the continuation page(s) attached, numbered two (2) through five (5).

DATED:  March 25, 2026

_____
Judge, United States Bankruptcy Court

Page 2  | ORDER ON DEBTOR'S MOTION TO ENFORCE THE DISCHARGE INJUNCTION

IN RE STEVEN MICHAEL MOEHLING                                Case No. 19-03857-CL13

The court has considered Debtor's motion to enforce the discharge injunction (ECF No. 54), Creditors' opposition and request for judicial notice (ECF Nos. 65 & 66), Debtor's reply (ECF Nos. 67 & 68), the parties supplemental briefing (ECF Nos. 71, 72 & 73), oral argument at the hearings on the matter, and its own docket.  It will **deny** the motion as follows.

### Background

Debtor filed for chapter 13 relief on Juny 28, 2019 (ECF No. 1).  The initial plan was confirmed on August 16, 2019 (ECF No. 14), then modified (ECF Nos. 30 & 37).  Under the plan, prepetition mortgage arrears were to be paid by the Trustee, and Debtor was to continue making regular contractual payments directly to the loan servicer, Select Portfolio Servicing, Inc. ("SPS") (ECF No. 2).

Debtor fell behind on his payments early in the bankruptcy, with post-petition arrears growing to $8,221.90 (ECF No. 25).  The court entered an adequate protection order ("APO") requiring him to make all future contractual payments of $1,682.19 on the first day of each monthly beginning May 1, 2020.  *Id.*  And he was to pay off the post-petition arrears in equal payments of $913.55 each on the 15th day of each month beginning on May 15, 2020 and continuing through January 1, 2021.  *Id.*  The APO expressly stated that accepting late or partial payments would not be deemed a waiver of any rights.  *Id.*

It is undisputed that all prepetition arrears were cured through the plan as of February 20, 2024 (ECF Nos. 42 & 48).  But in Wells Fargo's response to the Trustee's Notice of Final Cure Payment, it explained that although prepetition arrears were cured, Debtor was delinquent $6,021.17 in post-petition payments (ECF No. 48).  Discharge was then entered on April 4, 2024 (ECF No. 49).  Debtor says that on June 18, 2024 Creditors issued a notice of default alleging the account was two payments behind and threatening acceleration unless cured (ECF No. 54).

Debtor argues that Creditors Wells Fargo Bank, SPS, and Counsel Kutak Rock LLP violated the discharge injunction by misapplying post-confirmation plan payments.  *Id.*

### Legal Standards

*Discharge Injunction Generally*

The bankruptcy discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any [prepetition] debt as a personal liability of the debtor . . . ."  11 U.S.C. § 524(a)(2); *see also In re Ybarra*, 424 F.3d 1018, 1022 (9th Cir. 2005) ("A Chapter 7 bankruptcy discharge releases the debtor from personal liability for her pre-bankruptcy debts.").  "[W]hether initiated by the debtor or creditor, the creditor may not use a [post-discharge] contact to 'coerce' or 'harass' the debtor." *In re Nash*, 464 B.R. 874, 881 (B.A.P. 9th Cir. 2012).  And "[w]hether a creditor has 'coerced' a debtor is determined by reference to the affirmative acts the creditor took during the contact with the debtor, or afterwards, to collect the debt." *Id.*

Signed by Judge Christopher B. Latham March 25, 2026

Page 3  | ORDER ON DEBTOR'S MOTION TO ENFORCE THE DISCHARGE INJUNCTION

IN RE STEVEN MICHAEL MOEHLING                                        Case No. 19-03857-CL13

There "is no private right of action for violation of a § 524 discharge injunction and . . . an order of contempt under § 105 to enforce an existing injunction must be sought via motion in the bankruptcy" court. *Barrientos v. Wells Fargo Bank, N.A.*, 633 F.3d 1186, 1191 (9th Cir. 2011). A party who "knowingly violates the discharge injunction can be held in contempt under section 105(a) . . . ." *Zilog, Inc. v. Corning (In re Zilog, Inc.)*, 450 F.3d 996, 1007 (9th Cir. 2006). The Supreme Court has gone on to clarify that "a court may hold a creditor in civil contempt for violating a discharge order if there is *no fair ground of doubt* as to whether the order barred the creditor's conduct." *Taggart v. Lorenzen*, 587 U.S. 554, 556 (2019) (emphasis in original).

The court's § 105(a) contempt authority is civil in nature. *In re Moreno*, 479 B.R. 553, 569 (Bankr. E.D. Cal. 2012) (citing *Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1192 (9th Cir. 2003)). Civil sanctions are thus the appropriate remedy for a willful discharge injunction violation. *Id.* "Civil sanctions must either be compensatory or designed to coerce compliance." *Id.* And for a discharge injunction violation, "compensatory civil contempt allows an aggrieved debtor to obtain compensatory damages, attorneys fees, and the offending creditor's compliance with the discharge injunction." *Id.* (quoting *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 507 (9th Cir. 2002)).

Debtor bears the burden of demonstrating, by clear and convincing evidence, that "the creditor (1) knew the discharge injunction was applicable and (2) intended the actions which violated the injunction." *In re Zilog, Inc.*, 450 F.3d at 1007 (quoting *Renwick v. Bennett (In re Bennett)*, 298 F.3d 1059, 1069 (9th Cir. 2002)). Once Debtor has done so, the burden "then shifts to the contemnors to demonstrate why they were unable to comply." *In re Bennett*, 298 F.3d at 1069.

### 11 U.S.C. § 524(i)

Debtor argues Creditors violated § 524(i), which treats a creditor's willful failure to credit payments under the confirmed plan as a discharge injunction violation. Notably, a discharge violation under § 524(i) can be based on the creditor's actions before discharge. *In re Anderson*, 382 B.R. 496, 500 (Bankr. D. Or. 2008). There are two requirements to establish a violation under that section: (1) a willful failure to credit payments received under a confirmed plan; and (2) the act of the creditor to collect and failure to credit payments in the plan-mandated manner caused material injury to the debtor. *In re Valdellon*, No. 2:21-CV-01840-DJC, 2024 WL 404404, at *5 (E.D. Cal. Feb. 2, 2024). Willfulness only requires that the creditor intended to apply the payments received in the manner it applied them. *In re Bivens*, 625 B.R. 843, 848 (Bankr. M.D.N.C. 2021). It does not require bad faith or a specific intent to violate the Code or plan provisions. *Id.*

The statute also contains a safe harbor provision that renders it inapplicable if the order confirming the plan is revoked, the plan is in default, or the creditor has not received payments required to be made in the manner the plan calls for (including crediting the amounts required under the plan). 11 U.S.C. § 524(i).

In re Steven Michael Moehling                                    Case No. 19-03857-CL13

## Analysis & Discussion

*No Requirement to Reopen the Case or File an Adversary Proceeding*

Creditors argue the motion should not be considered because Debtor did not move to reopen the underlying case (ECF No. 65).  Debtor argues that it is not mandatory, but requests reopening if necessary (ECF No. 54).  A bankruptcy case can be reopened "to administer assets, to accord relief to the debtor, or for other cause."  11 U.S.C. § 350(b).  Reopening is generally appropriate to enforce or address a discharge injunction violation.  *See In re Hicks*, 184 B.R. 954, 962 (Bankr. C.D. Cal. 1995).  But the court sees no binding authority holding that it *must* reopen the case for the limited purpose of enforcing its discharge injunction.  And it will not elect to do so here.

Creditors further claim this dispute would need to be brought by an adversary proceeding because it raises a question as to whether the scope of the injunction covers its alleged conduct under § 524(i).  But the plain language of § 524(i) brings misapplied plan payments within the scope of the injunction by direct reference to § 524(a)(2).  And a motion to enforce the discharge injunction is not otherwise required to be brought as an adversary.  *See* Fed. R. Civ. Proc. 7001.

*11 U.S.C. § 524(a)(2)*

There is no direct violation under § 524(a)(2) (protecting collection of prepetition debts that were discharged) because only post-petition mortgage payments are at issue.  It is undisputed that prepetition arrears were paid in full through the plan (ECF No. 42).  So the payments at issue are non-dischargeable post-petition debts not subject to the discharge injunction.  However, as noted above, the willful misapplication of payments under the plan – even those occurring pre-discharge – may violate the injunction under § 524(a)(2).  11 U.S.C. § 524(i).

*11 U.S.C. § 524(i)*

Direct Payments to SPS Are Payments Under the Plan

Creditors assert that § 524(i) is inapplicable because regular monthly mortgage payments were not "payments under the plan" since the latter only contemplated curing prepetition arrearages (ECF No. 65).  *See* 11 U.S.C. § 524(i).

Section 3.1 of the modified plan called for the Trustee to pay $16,424.69 in prepetition arrearages (ECF No. 30).  But it also obliged Debtor to maintain contractual installment payments directly to SPS.  *Id.*  When a chapter 13 plan provides for the curing of prepetition mortgage arrears along with the debtor's direct payment of post-petition maintenance payments in accordance with § 1322(b)(5), such direct payments are payments under the plan.  *In re Mrdutt*, 600 B.R. 72, 77-78 (B.A.P. 9th Cir. 2019).  So Debtor's contractual monthly payments to SPS were indeed payments under the plan and subject to § 524(i)'s protection.

Signed by Judge Christopher B. Latham March 25, 2026

Page 5   | ORDER ON DEBTOR'S MOTION TO ENFORCE THE DISCHARGE INJUNCTION

IN RE STEVEN MICHAEL MOEHLING                                          Case No. 19-03857-CL13

<u>Debtor's Default</u>

Creditors further contend that even if the contractual mortgage payments within the scope of § 524(i), the claim still fails because Debtor defaulted (ECF No. 65).

The APO modified the parties' rights and waived Creditors' right to rely on § 524(i)'s safe harbor provision as to those defaults preceding April 1, 2020 (ECF No. 25).  So the period of review covers the four years between April 2, 2020 and the April 4, 2024 discharge (ECF No. 49).

Creditors submitted a full accounting of Debtor's mortgage payments (ECF No. 71).  It shows he defaulted on his APO obligations on the very first payments following its entry.  Specifically, he failed to timely remit the full $1,682.19 due May 1, 2020.  *Id.*  Rather, Debtor paid $1,300 on May 4, 2020, reflecting a partial payment three days late – a breach of the APO and default on the loan.[1] And Debtor generally remained in default for the plan's duration (ECF No. 71).  Creditor identified multiple other instances of payments that were reversed or returned for insufficient funds, such that at the plan's conclusion Debtor had accrued $6,021.17 in post-petition arrears (ECF No. 48).

Debtor argues that – despite his failure to make regular payments on time for that four-year period – he was not in default because Creditors failed to give notice, issue written warnings, or file notices (ECF No. 73).  But those procedures are to obtain stay relief under the APO, not to preserve default.  Nor does the decision not to seek stay relief constitute a waiver of default.

So § 524(i)'s safe harbor provision applies, and the court need not reach whether Creditors willfully misapplied any payments under the plan.

**Conclusion**

In sum, Debtor cannot maintain that Creditors violated § 524(a)(2) through § 524(i) because he was in default on payments under the plan.  Consequently, he has not met his burden of showing by clear and convincing evidence that Creditors Wells Fargo Bank, SPS, and Counsel Kutak Rock LLP willfully violated the discharge injunction.  The motion is accordingly **denied**.

IT IS SO ORDERED.

---

[1] Debtor claims he satisfied his May 2020 APO obligations by paying $1,300 on May 4, 2020 and $1,300 on May 19, 2020 (ECF No. 54).  While his collective monthly APO obligation was $2,605.74, that consisted of two separate payments: (i) the $1,692.19 contractual amount due on May 1, 2020; and (ii) the $913.55 for post-petition arrears due May 15, 2020 (ECF No. 37).  Debtor defaulted on both of those.

Signed by Judge Christopher B. Latham March 25, 2026